QUESTION: What authority and responsibility does the Central and Southern Florida Flood Control District have in the area of water quality in its operation under Ch. 373, F.S.?
SUMMARY: Pursuant to Ch. 373, F.S., the Central and Southern Florida Flood Control District has general authority to protect, through the permitting procedures, the "water resources" within its jurisdiction. However, since the primary authority for the control of water pollution rests with the Florida Department of Pollution Control pursuant to Ch. 403, F.S., the best way for the district to carry out its duties would be to require water quality permits or certifications from the Department of Pollution Control prior to considering any permit application under Ch. 373 or, alternatively, enter into an agreement with, or be appointed as agent of, the Florida Department of Pollution Control to carry out water quality permitting pursuant to the provisions of Ch. 403 and the rules and regulations of the Florida Department of Pollution Control. All actions of the district should comply with the Florida Water Plan, which includes Water Quality Standards. The Central and Southern Florida Flood Control District, created pursuant to s. 373.069, F.S., is authorized to act as agent for the Florida Department of Natural Resources in carrying out the provisions of the Florida Water Resources Act of 1972, ss.373.013- 373.6161, F.S. As a general rule, your agency is required by law to prevent harm to water resources within the district. While no specific reference is made in Ch. 373, F.S., to the district's authority to control water quality, it is implicit in the act that the district should not, by permit, authorize unlawful degradation of water quality. Rulemaking authority concerning water quality formerly held by water management districts was removed in 1967 by the Florida Legislature. Section 403.261, F.S., Ch. 67-436, Laws of Florida. The control of water by the districts and the Department of Natural Resources, while very broad and exclusive concerning the effect upon water quantity and land use, is specifically not exclusive with respect to water quality. Sections 373.023(2)373. 039, F.S. However, the purposes for which the Water Resources Act was created include the policy to preserve natural resources, fish, and wildlife (s. 373.016(2)(e), F.S.), to promote recreational developments, protect public lands, and assist in maintaining the navigability of rivers and harbors (s.373.016(2)(f), F.S.), and to otherwise promote the health, safety, and general welfare of the people of the state. Section373.016(2)(g), F.S. One specific power which is delegated to the district as well as the department is the power to seek legal redress should the effect of any dam, impoundment, reservoir, appurtenant work, or other work violate pollution laws of the state, thereby becoming a public nuisance by law. Section 373.433, F.S. Also see s. 373.603, F.S., as to the authority of the district to enforce any provision of the Florida Water Resources Act of 1972 in its entirety. The district, of course, is required by statute to grant permits only when, for consumptive use of water, it would not be harmful to the water resources of the area. Section 373.219(1), F.S. Similar provision is required for the permitting of areas for the management and storage of surface waters. Section 373.416(1), F.S. Since it is axiomatic that lowering water quality would be harmful to the water resources of the district, it is clear that the district's permitting procedures must take into consideration water quality. This is especially true when considering the general policy of creation of the water management district under the Florida Water Resources Act of 1972, and the fact that the statute is to be liberally construed for effectuating those purposes. Section 373.6161, F.S. However, the question then becomes, in what way can the flood control district best protect water quality? What standards does it use? The primary responsibility under Ch. 373, F.S., for the districts is, of course, management of water quantity. In order to determine how to best protect water resources from water quality degradation under the statutes above mentioned, the district might wish to take one of the two alternatives followed by other agencies faced with the same dilemma. The district might follow the example of the Public Service Commission which, in evaluating an application for construction or expansion of a sewage treatment plant, pursuant to its rules, refuses to review the application until provided with a permit or a certification from the Florida Department of Pollution Control. Section 25-10.42, Florida Administrative Code. Alternatively, the district might wish to request the Florida Department of Pollution Control to delegate its water quality permitting authority. The Florida Department of Pollution Control has authority to delegate this authority pursuant to s. 403.061(27), F.S., and to enter into agreements with agencies such as yours, pursuant to s. 403.061(24), F.S. Moreover, your agency must work within the confines of the State Water Use Plan prepared by the Department of Natural Resources pursuant to s. 373.036, F.S., which authorizes the department to prohibit water uses inconsistent with the plan. See s. 373.036(7), (8), and (9), F.S. The Water Use Plan is to be prepared in coordination with the Water Quality Standards system, and the Water Quality Standards are to be combined with the Water Use Plan to constitute the Florida Water Plan. Section 373.039, F.S. Based upon the broad responsibility of your agency to protect "water resources" pursuant to Ch. 373, F.S., particularly under the Water Plan, it would, of course, be inappropriate for your agency to authorize by permit something which would result in the lowering of water quality. For example, the district could possibly be acting contrary to the provisions of Ch. 403, F.S., by authorizing or causing waters to be contaminated contrary to provisions of other statutes. In addition to the provisions of Ch. 403 and rules and regulations of the Florida Department of Pollution Control, the district should be aware of s. 372.85, F.S., which makes it unlawful for any person or corporation to cause the drainage of deleterious substances into any of the fresh running waters of this state in quantities sufficient to injure, stupefy, or kill fish. To assure that the district does not permit activity which unlawfully lowers water quality, I therefore recommend that your district, as soon as possible, either require some type of water quality permit or certification be submitted to you along with any permit application, pursuant to Ch. 373, F.S., so that the Florida Department of Pollution Control's permission is granted either prior to consideration of your permit or concurrent with that consideration, or that you specifically obtain authority to act as agent for the Florida Department of Pollution Control in matters in which a proposed activity would affect both water quantity and quality.